IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| RAYLON A. DAVIS, | Case No. 3:20-CV-00672 |
| Petitioner, | JUDGE BENITA Y. PEARSON |
| v. | MAGISTRATE JUDGE JENNIFER DOWDELL ARMSTRONG |
| JAMES HAVILAND, WARDEN, | |
| Respondent. | **REPORT & RECOMMENDATION** |

## I.  INTRODUCTION

Petitioner, Raylon Davis ("Davis"), seeks a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1). Davis is an Ohio inmate currently serving a 27½ year term of imprisonment for possession of cocaine, possession of heroin, possession of ecstasy, illegal cultivation of marijuana, and having weapons under disability.  (*Id.*)  Davis asserts eight grounds for relief in his petition. (*Id.*)  Respondent, Warden James Haviland ("Warden"), filed a return of writ on October 9, 2020. (ECF No 9).  Davis did not file a traverse, though the Court granted Davis's motion for an extension of time until December 1, 2020, to do so. (*See* ECF No. 12 and non-document order dated November 16, 2020).

This matter was referred to me on September 2, 2022, under Local Rule 72.2 to prepare a report and recommendation on Davis's Petition and other case-dispositive motions.  For the foregoing reasons, I recommend that Davis's claims be DISMISSED and/or DENIED.  I further recommend that this Court not grant Davis a certificate of appealability.

1

## II.    RELEVANT FACTUAL BACKGROUND

For purposes of habeas corpus review of state court decisions, a state court's findings of fact are presumed correct and can be contravened only if the habeas petitioner shows, by clear and convincing evidence, that the state court's factual findings are erroneous. 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. The Ohio Court of Appeals for the Third District summarized the facts underlying Davis's appeal in Case Nos. CR 2014 0118 and CR 2015 0361 as follows:

### A.    Case Number CR 2014 0118

{¶2} On March 14, 2014, (then) Lima Police Department Patrolman Trent Kunkleman ("Kunkleman") was on third shift patrol in the city of Lima, Ohio. Around 3:20 a.m., Kunkleman responded to a police dispatch to a downtown parking lot in Lima in regards to a suspicious silver vehicle. Upon arriving at the parking lot, Kunkleman located a grey Hyundai. Kunkleman testified that the Hyundai was the only vehicle in the parking lot, so he shined his spotlight into the vehicle, identifying the Appellant as its sole occupant.

{¶3} A second Lima police officer, Sergeant Hillard ("Hillard"), arrived at the parking lot shortly after Kunkleman. Hillard testified that he received a police dispatch that a suspicious vehicle's car alarm was going off in the Lima parking lot in question.

{¶4} After Hillard arrived, Kunkleman walked up to the Appellant's vehicle in an attempt to engage Appellant in conversation, but Appellant did not respond. Instead, Appellant exited his vehicle, turned his back to Kunkleman, and then leaned back into the vehicle. Kunkleman testified that he was unable to see Appellant's hands, but was able to smell an overwhelming odor of raw marijuana. At this point, Kunkleman became alarmed that Appellant might be reaching into his vehicle for a weapon, so he pulled Appellant away from the car. Officers Kunkleman and Hillard testified that they saw the Appellant placing his hand down into his pants pocket at this point. Two additional law enforcement officers, who had also arrived on the scene, then grabbed Appellant and patted him down for officer safety. During the pat down, officers testified that there was a strong odor of marijuana coming from Appellant. Officers testified that they felt a "baggie" in Appellant's left pocket. Officers removed the baggie, which contained drugs. Appellant was then arrested.

{¶5} After Appellant's arrest, Kunkleman returned to the vehicle to investigate the odor of marijuana coming from it. Hillard, who was also at the vehicle at this time, searched the vehicle, and found a paper sack under the driver's seat that contained a large amount of

cocaine. In addition to the cocaine, officers located heroin, marijuana, ecstasy pills, a digital scale, and a ledger in the vehicle.

(ECF No. 9-1, Exhibit 57, PageID # 457-59); *see also State v. Davis,* 2018-Ohio- 4368, at ¶¶ 2-5,

121 N.E.3d 864 (3d Dist.).

### B.    Case Number 2015 CR 0361

{¶21} On January 12 or 13, 2015, investigators with the West Central Ohio Criminal Task Force ("WCOCTF") commenced an investigation to locate the Appellant, due to Appellant's outstanding warrants. On January 12, 2015, the Lima Police Department received an anonymous telephone call that Appellant was staying at 1222 Catalpa Street in Lima, Ohio. The caller further advised officers that Appellant was not a tenant on the lease at that location. Sgt. Charles Godfrey, ("Godfrey") then a supervisor at WCOCTF, attempted to contact the anonymous caller to verify the information provided, but was unable to do so. So, based on the information provided (by the anonymous caller), Godfrey set up an undercover operation on January 13, 2015 to monitor the 1222 Catalpa Street residence in an attempt to locate Appellant.

{¶22} On January 17, 2015, Godfrey observed a Chrysler 300 parked at the Catalpa Street residence. Later that day, an individual in a hooded sweatshirt left the residence in that vehicle. Since the vehicle's windows were heavily tinted, and because Godfrey could not see inside it, Godfrey arranged for the Ohio State Highway Patrol to stop the vehicle for a tinted windows violation. When the Chrysler was stopped a person identified as "Watkins" was located as a passenger in the vehicle. Watkins told law enforcement officials that he and the driver had been visiting "Ray" at 1222 Catalpa Street. When shown a picture of Appellant, Watkins confirmed that "Ray" was the Appellant.

{¶23} With that information (from Watkins), Godfrey returned to 1222 Catalpa Street, believing that Appellant was present in the residence. And, after verifying that Appellant still had active outstanding warrants, Godfrey went to the residence's front door while law enforcement set up a perimeter around the house. Godfrey knocked on the door, identified that he was a police officer, and that he had a warrant for Appellant's arrest. Godfrey further advised that if the door wasn't opened it would be knocked down.

{¶24} While Godfrey was at the front door attempting to kick it in, another investigator radioed Godfrey, advising him that the Appellant was seen leaving the residence through the back door, but then returned into the residence when law enforcement officials were seen.

{¶25} Law enforcement eventually entered the house, located Appellant, and arrested him on the outstanding warrants. During a protective sweep of the residence, officers observed a "marijuana grow tent" in plain view. Officers observed several marijuana plants and a marijuana grow operation inside the tent (which was searched because it was large enough to conceal a person). Based on the Appellant's arrest and the officer's observations during the protective sweep, law enforcement immediately obtained a search warrant for the residence.

(ECF No. 9-1, Exhibit 57 at PageID# 464-65); *see also Davis,* 2018-Ohio- 4368, at ¶¶ 21-25.

**C.**     **State Conviction**

In March 2014, the Allen County grand jury issued an indictment in Case No. CR 2014 0118, charging Davis with: (1) one count of possession of cocaine, in violation of R.C. § 2925.11(A), (C)(4)(e) (Count 1); (2) one count of possession of heroin, in violation of R.C. § 2925.l11(A), (C)(6)(b) (Count 2); and (3) one count of aggravated possession of ecstasy in violation of R.C. § 2925.11(A), (C)(1)(a) (Count 3.)  (ECF No. 9-1, Case No. CR 2014 0118, PageID#103-106.)  Davis entered a plea of not guilty at his arraignment and was released on bond. (ECF No. 9-1, Exhibit 4, PageID#114.) The trial court subsequently found that Davis violated the terms of his bond on or about March 10, 2015, by testing positive for the use of an illegal drug and failing to appear for urinalysis testing.  (ECF No. 9-1, Exhibit 5, PageID#117.)  The trial court revoked Davis's bond and ordered it forfeited because Davis failed to appear for a pretrial scheduled for March 12, 2015.  (*Id.*)  A bench warrant was subsequently issued for Davis's arrest. (ECF No. 9-1, Exhibit 6, PageID# 119.)

On September 17, 2015, Davis was indicted on new charges in a separate criminal case, Case No. CR 2015 0361,  with: (1) one count of possession of cocaine in violation of R.C. § 2925.11(A), (C)(4)(d) (Count 1); (2) one count of possession of marijuana in violation of R.C. § 2925.11(A), (C)(6)(d) (Count 2); (3) one count of possession of marijuana in violation of R.C. § 2925.11(A), (C)(3)(d) (Count 3); (4) one count of illegal cultivation of marijuana in violation of R.C. § 2925.11(A), (C)(3)(d) (Count 4); and (5) one count of having weapons under disability in violation of R.C. § 2923.13(A)(3), (B) (Count 5).  (ECF No. 9-1, Exhibit 7, Case No. CR 2015 0361, PageID # 120-126.)  Counts 1-4 held multiple forfeiture specifications.  (*Id.*)  Davis entered a plea of not guilty on all counts and specifications.  (ECF No. 9-1, Exhibit 8, PageID # 129.)

On February 19, 2016, Appellant was apprehended by the U.S. Marshal's Service in Detroit,

Michigan.  (ECF No. 9-1, Exhibit 59 at PageID# 460.)  After returning to Allen County, the trial court ordered that Davis be held in the Allen County Jail, without bond, until further order of the court.  (*Id.*)  The trial court scheduled Davis's jury trial for April 19, 2016.  (*Id.*)

Davis was represented by five different attorneys throughout the course of both criminal proceedings.  (*Id.* at 463.)  Prior to trial, Davis, through counsel, filed numerous motions for continuance and waivers of his right to a speedy trial in both criminal cases.  (ECF No. 9-1, Exhibits 9-22, PageID#s 129-159.)  Davis also filed several motions to suppress/motions in limine in both criminal cases.  (ECF No. 9-1, Exhibits 25-26, PageID#162-179; Exhibits 29-31, PageID#s 206-225.)  After conducting suppression hearings, the trial court issued written orders denying the motions in both cases.  (ECF No. 9-1, Exhibit 28, PageID #193-194; Exhibit 32, PageID#  226-236.)

The State filed motions to consolidate Davis's two criminal cases.  (ECF No. 9-1, Exhibit 33, 34, PageID# 237-244.)  Davis, through counsel, opposed the motions.  (ECF No. 9-1, Exhibits 35-38, PageID # 245-261.)  In a written order dated August 26, 2016, the trial court granted the State's motion and consolidated the cases for trial.  (ECF No. 9-1, Exhibit 40, PageID # 266-269.)

On February 3, 2017, the State filed its motion for a continuance, due to the Ohio Supreme Court's recent decision in *State v. Gonzales,* which required that the State must prove the actual weight of a drug in question (excluding any filler materials) to meet the statutory weight requirement.  (ECF No. 9-1, Exhibit 24, PageID # 160.)  The trial court granted the motion, finding that *Gonzales* was a significant departure from previous precedent and custom in drug prosecutions.  (*Id.*)  Davis's trial was rescheduled for May 16, 2017.  (ECF No. 9-1, Exhibit 57, PageID # 462.)

On April 12, 2017, Davis, through counsel, filed a motion to dismiss based on the alleged violation of his speedy trial rights.  (ECF No. 9-1, Exhibit 41, PageID# 270-273.)  The State filed a brief in opposition on April 18, 2018.  (ECF No. 9-1, Exhibit 42, PageID#  274-277l.)  The trial court denied the motion to dismiss in a written order dated April 19, 2018 (ECF No. 9-1, Exhibit 43, PageID#

278-279.)

On May 9, 2017, Davis fired his trial counsel, and a new attorney was appointed to represent him.  (ECF No. 9-1, Exhibit 59, PageID # 462.) As a result, Davis's trial was rescheduled for August 1, 2017. (*Id.*)

On July 28, 2017 – while represented by counsel –  Davis filed an omnibus motion to proceed pro se, a motion to suppress, and a motion for continuance of trial.  (ECF No. 9-1, Exhibit 43, PageID # 280-281.)  The court denied the omnibus motion on August 1, 2017, in a written order, ruling in relevant part that: (1) Davis had been represented by five attorneys during the course of this case, is currently represented by counsel, and does not have a right to proceed both pro se and through counsel; (2) counsel already filed a demand for discovery, request for notification of the prosecutor's evidence, and a motion for bill of particulars; (3) "extensive discovery" has issued; (4) previous counsel previously filed two motions for suppress, which were heard in "very extensive suppression hearing" in October 2016; and (4) the case has been continued several times, mostly at the request of Davis and often precipitated by the multiple changes of counsel.   (ECF No. 9-1, Exhibit 47, PageID# 300-302.)

The case proceeded to a jury trial on August 1, 2017.  Prior to trial, the State made an oral motion to amend Count 1 of the Indictment in Case No. CR 2014 0118 from a first-degree felony possession of cocaine charge to a second-degree possession of cocaine charge.  (*See* ECF No. 9-1, Exhibit 48, PageID # 303-318.)  Additionally, the State made an oral motion to dismiss Count 3 in the Indictment in Case No. CR 2014 0118.  (*Id.*)  Finally, the State made an oral motion to amend Count 3 in the Indictment in Case No. CR 2015 0361 from a third-degree felony possession of marijuana charge to a fifth-degree possession of marijuana charge.  (*Id.*)  Davis's counsel did not object to these motions, and the trial court granted them.  (*Id.*)

The jury found Davis guilty of Counts 1 and 2 of the Indictment in Case No. CR 2014 0118.  (*See* ECF No. 9-1, Exhibit 49, PageID# 319-323). On September 18, the trial court sentenced Davis to

consecutive prison terms of six years for Count 1 and 12 months for Count 2. (*Id.*)

The jury also found Davis guilty of Counts 1 through 5 of the Indictment in Case No. CR 2015 0361. (ECF No. 9-1, Exhibit 50, PageID# 324-330.) The trial court sentenced Davis to consecutive terms of seven years in prison on Count 1, seven years in prison on Count 2, 12 months in prison on Count 3, 30 months in prison on Count 4, and 36 months in prison on Count 5. (*Id.*) The trial court order this sentence to be served consecutive to the prison term imposed in Case No. CR 2014 0118. (*Id.*) Davis's aggregate sentence was therefore 27 ½ years.

### D.  <u>Direct Appeal</u>

Davis, through counsel, filed timely notices of appeal in the Third District Court of Appeals, Allen County, Ohio. (ECF No. 9-1, Exhibits 51-52, PageID # 331-346.) The cases were consolidated for the purposes of appeal. (ECF No. 9-1, Exhibits 53-54, PageID # 347-48). In his merit brief, Davis raised the following assignments of error:

1. Appellant's convictions are not supported by sufficient evidence.

2. Appellant's convictions are against the manifest weight of the evidence.

3. Appellant received ineffective assistance of trial counsel in violation of his constitutional rights in that regard.

4. The trial court erred in denying the Appellant's motion to dismiss the case based upon violation of his rights to a speedy trial.

5. The trial court erred, as a matter of law, by permitting the Appellee to present expert testimony by an expert witness that had not provided a report.

6. The trial court erred, to the prejudice of Appellant, by consolidating the two trials for separate and distinct cases against Appellant.

7. The trial court erred, to the prejudice of Appellant, by denying Appellant's motion to suppress all evidence presented in case number 0118.

8. The trial court erred, to the prejudice of Appellant, by denying Appellant's motion to suppress all evidence presented in case number 0361.

(ECF No. 9-1, Exhibit 55, PageID # 349-97.) The State filed an opposition brief. (ECF No. 9-1,

Exhibit 56, PageID # 398-454).  On October 29, 2018, the Third District Court of Appeals issued a comprehensive 51-page written opinion and judgment entry overruling all of Davis's assignments of error and affirming the trial court's judgment.  (ECF No. 9-1, Exhibit 57, PageID # 455-511.)

On December 12, 2018, Davis, through counsel, filed a timely notice of appeal in the Supreme Court of Ohio.  (ECF No. 9-1, Exhibit 58, PageID # 512-13.)  Davis set forth the following propositions of law in his memorandum in support of jurisdiction:

1. Where a defendant is merely found in the proximity of controlled substance, without more, his convictions for drug offenses are not supported by sufficient evidence.

2. A criminal defendant receives ineffective assistance of trial counsel where the record reveals that trial counsel fails to object to material hearsay evidence, fails to properly challenge expert testimony, and fails to properly challenge a joinder issue.

3. In order to sustain reasonableness of a continuance of trial by a trial court based upon the trial court's schedule, record was clearly reflect that the State has been diligent in his efforts to bring the matter trial and must show the trial court's schedule with specificity.

4. Absent a showing of good cause, a party may not introduce the testimony of an expert witness for which it has provided no expert witness report.

5. Joinder of multiple offenses for trial in a criminal case is not permitted where the acts constituting one offense would not be admissible in trial of the other offense and the evidence is not simple and direct.

6. A seizure and subsequent search of a motor vehicle lacks probable cause and must be suppressed, where the record reveals that the conduct of the defendant did not give any reason to the arresting officers to believe that a crime was being committed.

7. Absent either a search warrant, or exigent circumstances and probable cause that a crime is being committed, police authorities have no right to enter and search a private home. (Exhibit 59.)

(ECF No. 9-1, Exhibit 59, PageID # 514-31.)

On March 6, 2019, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4).  (ECF No. 9-1, Exhibit 60, Page ID # 532.)

**E.    Motions for Reconsideration**

On October 15, 2019, Davis, pro se, filed an untimely Motion for Reconsideration and En Banc consideration, in the Court of Appeals, Allen County, Ohio. (ECF No. 9-1, Exhibit 61, PageID # 533-47.) Davis, pro se, also filed a notice of filing exhibits to accompany the motion for reconsideration. (ECF No. 9-1, Exhibit 62, PageID # 548-553.) On November 7, 2019, the Third District Court of Appeals denied Davis' application for reconsideration and en banc consideration as untimely, finding that Davis did not set forth any "extraordinary circumstances" to justify the time from seeking reconsideration or en banc reconsideration from 10 days to more than 11 months. (ECF No. 9-1, Exhibit 63-64, PageID # 554-57.)

On December 18, 2019, Davis, pro se, filed a timely notice of appeal in the Supreme Court of Ohio. (ECF No. 9-1, Exhibit 65, PageID #558-59.) Davis filed a memorandum in support of jurisdiction. (ECF No. 9-1, Exhibit 66, PageID # 560-636.)  On March 3, 2020, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4). (ECF No. 9-1, Exhibit 67, PageID # 637.)

On March 12, 2020, Davis, pro se, filed a motion for reconsideration of the Supreme Court's ruling. (ECF No. 9-1, Exhibit 68, PageID # 638-41.) On May 12, 2020, the Supreme Court of Ohio denied Davis' motion for reconsideration. (ECF No. 9-1, Exhibit 69, PageID # 642.)

**F. Motion for Correction and Modification of the Record**

On February 7, 2020, Davis, pro se, filed a motion for correction and modification of the record in the Allen County Court of Common Pleas. (ECF No. 9-1, Exhibit 70, PageID # 643-56.) On February 11, 2020, the trial court denied Davis' motion, finding that Davis did not point to any particular part of the record he wished to correct or amend, and that all of the issues Davis listed in his memorandum in support of his motion were addressed by the appeals court. (ECF No. 9-1, Exhibit 71, PageID #661-62)

On March 30, 2020, Davis, pro se, filed a motion for reconsideration in the Third District Court of Appeals. (ECF No. 9-1, Exhibit 76, PageID # 671-80.) On March 31, 2020, the appeals court denied Davis' motion for reconsideration, finding that Davis's motion "fails to set forth any obvious error in the decision or raise any issue not properly considered in the first instance." (ECF No. 9-1, Exhibit 77, PageID # 681-82.)

## G. **Federal Habeas Petition**

Davis raises the following eight grounds for relief in his Petition, which largely mirror the assignments of error set forth on direct appeal[1]:

GROUND ONE: Violation of Due Process under the Fifth, Sixth, and Fourteenth Amendments, where the convictions and sentence of Petitioner Davis resulted from insufficient evidence.

(a) Supporting facts: The State failed to produce any evidence proving that Petitioner Davis owned or possessed the contents (i.e. heroin and cocaine) of the motor vehicle in question. Incase number CR 2014 0118, the State failed to produce competent and credible evidence establishing that Petitioner Davis had possession of the cocaine and heroin as charged. In case number CR 2015 0361, the State failed to provide evidence that linked Petitioner Davis with the contraband found at the Catalpa Street residence, nor was there competent and credible evidence that Petitioner Davis was the sole occupant of the Catalpa Street residence at the time of the unlawful arrest.

GROUND TWO: Violation of Due Process under the Fifth, Sixth, and Fourteenth Amendments, where the convictions and sentence of Petitioner Davis are against the manifest weight of the evidence.

(a) Supporting facts: In case number CR 2014 0118 and CR 2015 0361, a review of the entire record, the evidence and all reasonable inferences, and considering the credibility of witnesses and conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

GROUND THREE: Ineffective Assistance of Counsel, in violation of the Sixth and Fourteenth Amendments.

(a) Supporting facts: Trial counsel was ineffective, in part, because trial counsel failed to object to hearsay statements during trial, failed to conduct critical voir dire, and trial counsel failed to file essential motions, such as a timely motion to sever the prejudicial counts,

---

[1] Davis's grounds for habeas relief and supporting facts asserted in his petition are set forth verbatim herein, including certain typographical and/or grammatical errors.

among other errors.

GROUND FOUR: Violation of Due Process and Equal Protection under the Sixth, Eight, and Fourteenth Amendments, where Petitioner Davis was denied his right to a speedy trial.

(a) Supporting facts: The continuance granted the State was unreasonable, the record journal entry is mandatory when an Ohio trial court sets a continuance beyond the protected liberty interest prescribed by R.C. 2945.71, and congested dockets are unreasonable imder R.C. 2945.72(H) when not journalized prior to the expiration of time limits set by R.C. 2945.71(C)(2) and (E).

GROUND FIVE: Violation of Due Process under the Fifth, Sixth, and Fourteenth Amendments, where the State trial court committed an abuse of discretion by permitting testimony by a disqualified expert witness.

(a) Supporting facts: The trial court was required to exclude the identification of expert testimony, because the State failed to comply with the protected liberty interest of Ohio Criminal Rule 16(K).

GROUND SIX: Violation of Due Process under the Fifth, Sixth, and Fourteenth Amendments, where the State trial court committed an abuse of discretion by consolidating two trials for separate and distinct cases.

(a) Supporting facts: Petitioner Davis was subjected to substantial prejudice where the elements of the offenses charged, and those underlying controlling facts of the conjoined cases, were neither "simple" nor "direct."

GROUND SEVEN: Violation of Due Process under the Fifth, Sixth, and Fourteenth Amendments, where the State trial court committed an abuse of discretion by denying Petitioner's motion to suppress in Case Number CR 2014 0118.

(a) Supporting facts: In Case Number CR 2014 0018, law enforcement officials lacked probable cause or reasonable suspicion of criminal activity to detain Petitioner Davis and impermissibly detained him after he chose not to engage the official in conversation and walked away from the officers. Also, the search of the vehicle started prior to the arrest.

GROUND EIGHT: Violation of Due Process under the Fifth, Sixth, and Fourteenth Amendments, where the State trial court committed an abuse of discretion by denying Petitioner's motion to suppress in Case Number CR 2015 0361.

(a) Supporting facts: In Case Number 2015 0361, the law enforcement officials lacked probable cause for the search of the residence located at 1222 Catalpa Street, Lima, Ohio.

(ECF No. 1, PageID # 5-7).

The Warden filed a return of writ on October 9, 2020. (ECF No. 9.) On November 12, 2020, Davis filed a motion for extension of time Until December 1, 2020, to respond to the Warden's return of writ (ECF No. 12), which then-Magistrate Judge Knepp granted on November 16, 2020. Davis, however, never filed a Traverse.

On October 27, 2020, Davis filed motion to hold in abeyance to allow him to amend his petition with future claims that he had not exhausted in state court. (ECF No. 10). The Warden opposed that motion on November 10, 2020 (ECF No. 11). On January 29, 2021, then-Magistrate Judge Ruiz denied Davis's motion to hold in abeyance, finding in relevant part that: (1) the Court cannot find that Davis's two new unsupported and undeveloped claims are potentially meritorious; (2) it is further questionable whether the stay provisions in *Rhines* are applicable; (3) the Court sees little purpose in delaying resolution of this matter for claims that are likely procedurally defaulted; and (4) it is highly questionable that Davis's proposed claims – that he wishes to add to the petition at some unspecified future date – would be timely. (ECF No. 14, PageID # 1340-41.)

## III.    STANDARDS OF REVIEW AND GOVERNING LAW

### A.    Jurisdiction

28 U.S.C. § 2254(a) authorizes this court to entertain an application for a writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him[.]" 28 U.S.C. § 2241(d). The Court of Common Pleas of Allen County sentenced Davis, and the Court takes judicial notice Allen County is within this Court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Davis's § 2254 petition.

### B. Cognizable Federal Claim

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Glaze v. Morgan,* No. 1:19-CV-02974, 2022 WL 467980, at *4 (N.D. Ohio Jan. 18, 2022) (quoting *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991)). Thus, "errors in application of state law ... are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.").

A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quotation omitted). Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).

### C.    AEDPA Standard of Review

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), provides in relevant part as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>    (2) resulted in a decision that was based on an unreasonable determination of the facts
>    in light of the evidence presented in the State court proceeding.

(*Id.*)

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous —it must be "objectively unreasonable." *Id.*

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in

14

the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's ... determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet... because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id.* at 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents" and "goes no further." *Id.* Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id.

### D. Exhaustion and Procedural Default

Under AEDPA, state prisoners must exhaust all possible state remedies, or have no no remaining state remedies, before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982). This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838,

845 (1999). In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The exhaustion requirement, however, "refers only to remedies still available at the time of the federal petition." *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982). It "does not require pursuit of a state remedy where such a pursuit is clearly futile." *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981).

Procedural default is a related but "distinct" concept from exhaustion. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Procedural default is "a critical failure to comply with state procedural law," *Trest v. Cain*, 522 U.S. 87, 89 (1997), resulting in a bar to federal habeas review unless the petitioner has a sufficient basis for having the default excused. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "A claim may become procedurally defaulted in two ways." *Williams*, 460 F.3d at 806. "First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court." *Id.* "If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted." *Id.* "Second, a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures'" *Id.* (quoting *O'Sullivan*, 526 U.S. at 847). "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id.* A claim is fairly presented when it has been asserted as a federal constitutional issue at every state of the state court review process. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010); *Williams*, 460 F.3d at 806.

Procedural default, however, can be excused and will not preclude consideration of a claim on federal habeas review if the petitioner can demonstrate: (1) "cause for the default and actual

prejudice as a result of the alleged violation of federal law;" or (2) "failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim – supported by new reliable evidence not presented at trial – would establish that the petitioner was "actually innocent" of the offense. *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

## IV.    LAW AND ANALYSIS

### A.    <u>Ground One:  Sufficiency of the Evidence</u>

In Ground One, Davis asserts that the trial court violated his constitutional rights under the Fifth, Sixth, and Fourteenth Amendments because his conviction and sentence resulted from insufficient evidence. (ECF No. 1, PageID# 5.) Specifically, Davis contends that: (1) the State failed to produce *any* evidence in Case No. CR 2014 0118 proving that he owned or possessed the heroin or cocaine in the motor vehicle; and (2) the State failed to provide evidence in Case No. CR 2015 0361 that linked Davis with the contraband found at the Catalpa Street residence, nor was there competent and credible evidence that Davis was the sole occupant of the Catalpa Street residence at the time of the unlawful arrest.  (*Id.*) (emphasis in the original). The Warden maintains that Davis is not entitled to habeas relief on this claim because Davis has not demonstrated that the Third District Court of Appeals' judgment was contrary to, or an unreasonable application, of clearly established federal law as determined by the Supreme Court of the United States.  (ECF No. 9, PageID # 40-45.)  For the following reasons, I find that the Warden's argument is well-taken.

Challenges to a state court conviction based on the sufficiency of the evidence are properly cognizable in a federal habeas corpus petition. *See Jackson v. Virginia*, 443 U.S. 307, 321 (1979). The Sixth Circuit has recognized that, after AEDPA, federal courts reviewing state habeas claims accord a double layer of deference:

17

***First***, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. *See United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir.1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. ***Second***, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. *See* 28 U.S.C. § 2254(d)(2).

*White v. Steel,* 602 F.3d 707, 710 (6th Cir. 2009) (quoting *Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009) (emphasis added)). Under the *Jackson* standard, a habeas petitioner "who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle." *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2011) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

Here, the sufficiency of the evidence arguments Davis asserts in his Petition mirror the arguments he previously made to the Third District Court of Appeals. The appeals court reasonably rejected Davis's argument that there was insufficient evidence to support his convictions, setting forth its reasoning as follows:

{¶ 45} In his first assignment of error, Appellant argues that there was insufficient evidence in both case number CR 2014 0118 and CR 2015 0361 to sustain his convictions. For the reasons outlined below, we disagree.

***Standard of Review***

{¶ 46} "Whether there is legally sufficient evidence to sustain a verdict is a question of law." *State v. Lyle*, 3rd Dist. Allen No. 1-14-41, 2015-Ohio-1181, 2015 WL 1405370, ¶ 8 citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). Sufficiency is a test of adequacy. Id. Under a challenge alleging insufficient evidence, "'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *Id.* quoting *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77.

18

**Analysis – Case Number CR 2014 0118**

{¶ 47} In case number CR 2014 0118, Appellant was found guilty in Count I of possession of drugs (cocaine) and guilty in Count II of possession of drugs (heroin), both in violation of R.C. 2925.11(A), which states:

> (A) No person shall knowingly obtain, *possess,* or use a controlled substance or a controlled substance analog.

(Emphasis added). R.C. 2925.11(A).

{¶ 48} On appeal, Appellant argues that the State failed to produce *any* evidence proving that Appellant owned or possessed the contents (i.e. heroin and cocaine) of the motor vehicle in question. "'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). "'The issue of whether a person charged with drug possession knowingly possessed a controlled substance is to be determined from all the attendant facts and circumstances available.'" *State v. Frye*, 2018-Ohio-894, 108 N.E.3d 564, ¶ 50 (3rd Dist.) quoting *State v. Brooks*, 3rd Dist. Hancock No. 5-11-11, 2012-Ohio-5235, 2012 WL 5507092, ¶ 45. *See also*, *State v. Teamer*, 82 Ohio St.3d 490, 492, 696 N.E.2d 1049 (1998).

{¶ 49} "'Possession of drugs can be either actual or constructive.'" *Id.* at ¶ 51, quoting *State v. Bustamante*, 3rd Dist. Seneca Nos. 13-12-26, 2013-Ohio-4975, 2013 WL 6034715, ¶ 25. "'A person has "actual possession" of an item if the item is within his immediate physical possession.'" *State v. Watts*, 3rd Dist. Hancock No. 5-12-34, 2016-Ohio-257, 2016 WL 363480, ¶ 11, quoting *State v. Williams*, 4th Dist. Ross No. 03CA2736, 2004-Ohio-1130, 2004 WL 444147, ¶ 23. "'A person has 'constructive possession' if he is able to exercise dominion and control over an item, even if the individual does not have immediate physical possession of it." *Id.* quoting *Williams*, 4th Dist. Ross No. 03CA2736, 2004-Ohio-1130, ¶ 23. "Ownership need not be proven to establish constructive possession." *State v. Voll, 3rd Dist. Union* No. 14-12-04, 2012-Ohio-3900, 2012 WL 3679556, ¶ 18. "Furthermore, 'readily usable drugs in close proximity to an accused may constitute sufficient circumstantial evidence to support a finding of constructive possession.'" *Id.* quoting *State v. Ruby*, 149 Ohio App.3d 541, 2002-Ohio-5381, 778 N.E.2d 101, ¶ 36.

{¶ 50} The State may establish constructive possession by circumstantial evidence alone. *Id.* at ¶ 19. "Absent a defendant's admission, the surrounding facts and circumstances, including the defendant's actions, are evidence that the trier of fact can consider in determining whether the defendant had constructive possession." *Id.*

{¶ 51} In case number CR 2014 0118, the State produced competent and credible evidence establishing that Appellant had possession of the cocaine and heroin as charged. Specifically, Kunkleman testified that on March 21, 2014 at approximately 3:20 a.m., he was dispatched to a report of a suspicious vehicle sitting in the parking lot of 234 North Main Street. (Trial, 08/01/2017 Tr., Vol. I at 63-64). Kunkleman pulled up behind the vehicle to run the plates, and noticed that an African-American male was sitting in the driver's seat. (*Id.* at 66). The

male, who was later identified as Appellant, was the sole individual in the vehicle. (*Id*.). As Kunkleman exited his vehicle, Appellant exited the vehicle in which he was sitting. (Id. at 67). Appellant then began walking towards Kunkleman, and refused to engage him in conversation. (*Id*.). Shortly thereafter, Appellant turned around and walked back to towards the vehicle. (*Id.*). Kunkleman followed Appellant back to the vehicle, and noticed the overwhelming smell of marijuana coming from the car. (*Id.* at 68). Appellant was observed leaning into the driver's compartment and grabbing at something on the floorboard. (*Id*.). Appellant refused to comply with Kunkleman's request to exit the vehicle, and as a result Kunkleman pulled him away from the vehicle for officer safety. (*Id*.). Hillard, who had arrived at the scene simultaneously with Kunkleman, looked inside the vehicle and found a paper bag with cocaine in it sticking out from under the driver's seat. (*Id.* at 66, 71). Upon searching the center armrest, Kunkleman found a baggie that contained heroin inside it. (*Id.* at 71). Upon conducting a pat down of Appellant for officer safety, a large amount of money (over $5,000) was located on Appellant's person. (Id. at 70).

{¶ 52} This evidence, when viewed in a light most favorable to the State, could lead a rational trier of fact to find that Appellant had constructive possession of the drugs in the vehicle. Appellant was the only person in the vehicle at the time of the stop. Further, the drugs in the vehicle were located on the driver's side floorboard and the center console, in the proximity of Appellant's position as the driver. While proximity to drugs alone is insufficient to establish constructive possession, proximity to the object does constitute some evidence of constructive possession. *State v. Rodgers*, 3rd Dist. Hancock No. 5-10-35, 2011-Ohio-3003, 2011 WL 2448962, ¶ 30. Lastly, Appellant's furtive movements in the area where the cocaine was located is indicative of knowledge and possession.

{¶ 53} Given Appellant's conduct and the attending facts, we conclude that a rational trier of fact could have found the essential elements of the crimes proven beyond a reasonable doubt in case number CR 2014 0118.

### *Analysis –Case Number CR 2015 0361*

{¶ 54} Pertinent to this appeal, in case number CR 2015 0361, Appellant was found guilty in Count I of possession of drugs (cocaine), guilty in Count II of possession of drugs (heroin), and guilty in Count III of possession of drugs (marijuana), all in violation of R.C. 2925.11(A), which states:

> (A) No person shall knowingly obtain, *possess*, or use a controlled substance or a controlled substance analog.

(Emphasis added). R.C. 2925.11(A).

{¶ 55} In Count IV, Appellant was charged with illegal cultivation of marijuana, in violation of R.C. 2925.04(A), which states:

> (A) No person shall knowingly cultivate marihuana or knowingly manufacture or otherwise engage in any part of the production of a controlled substance.

R.C. 2925.04(A).

{¶ 56} In Count V, Appellant was charged with having weapons while under disability, in violation of R.C. 2923.13(A)(3), which states:

>  (A) Unless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:

* * *

>  (3) The person is under indictment for or has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse.

R.C. 2923.13(A)(3).

{¶ 57} In support of his sufficiency-of-the-evidence challenge, Appellant argues that the State failed to provide evidence that linked Appellant with the contraband found at 1222 Catalpa Street. We find otherwise. Specifically, testimony at trial revealed that after Appellant was arrested, Appellant told law enforcement officials that: "I don't live here. I'm just seeing a girl." (Trial, 08/02/2017 Tr., Vol. I, at 145). But, when law enforcement questioned Appellant about the "girl," Appellant wasn't able to provide any information about her to law enforcement. (Id.).

{¶ 58} Moreover, after the search warrant was executed, authorities found a book bag in a bedroom closet that contained: a VISA gift card with Appellant's name on it; a medical marijuana card with Appellant's personal identifiers on it; a Huntington Bank VISA card with Appellant's name on it; and Appellant's social security card and birth certificate. (Id., Vol. II at 242). Also located within the residence were three handguns. (Id., Vol. I 187-88). Authorities failed to find any women's or children's clothing in the residence. (Id., Vol. II at 245). Contrary to Appellant's argument on appeal, there was competent and credible evidence that Appellant was the sole occupant of 1222 Catalpa Street at the time of the arrest, the protective sweep, and when the search occurred in the residence. We find that Appellant's theory of possession is inconsistent with the evidence.

{¶ 59} After viewing the evidence in a light most favorable to the prosecution, we find that a rational trier of fact could have found the essential elements of the crimes charged proven beyond a reasonable doubt in case number CR 2015 0361. Accordingly, we overrule Appellant's first assignment of error in its entirety.

(ECF No. 9-1, Exhibit 57, PageID # 473-79); *see also Davis,* 2018-Ohio-4368, at ¶¶ 45-59.

Applying the first layer of the "double layer of deference," *White*, 602 F.3d at 710, to Case

No. CR 2014 0118 and viewing the evidence discussed above in the Third District Court of Appeals'

ruling in the light most favorable to the prosecution, any rational trier of fact could have found that the trial court evidence was sufficient prove the essential elements of the crimes beyond a reasonable doubt because: (1) Davis was the only person in the vehicle at the time of the stop; (2) the drugs in the vehicle were located on the driver's side floorboard and the center console; and (3) Appellant's furtive movements in the area where the cocaine was located is indicative of knowledge and possession. (*Id.*) Additionally, any rational trier of fact could have found that the trial court evidence was sufficient prove the essential elements of the crimes in Case No. CR 2015 0361 beyond a reasonable doubt because: (1) after the search warrant was executed, authorities found a book bag in a bedroom closet that contained a VISA gift card with Davis's name on it, a medical marijuana card with Davis's personal identifiers, a Huntington Bank VISA card in Davis's name, and Davis's social security card and birth certificate; (2) authorities failed to find any women's or children's clothing in the residence; and (3) Davis could provide no information about "the girl" he was allegedly visiting. (*Id.*).

And even if I had concluded (which I do not) that a rational trier of fact could not have found Davis guilty beyond a reasonable doubt, on habeas review I must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. *White*, 602 F.3d at 710. Applying the second layer of the "double layer of deference," Davis fails to make *any* argument that the Third District Court of Appeals' ruling on his sufficiency of the evidence claims in Case Nos. CR 2014 0118 or CR 2015 0361 were unreasonable. Accordingly, I recommend that this Court deny Davis's Ground One claim because Davis has not demonstrated that the state court judgment was contrary to, or an unreasonable application, of clearly established federal law as determined by the Supreme Court of the United States.

### B.      Ground Two: Manifest Weight of the Evidence

In Ground Two, Davis argues that his convictions and sentence are against the manifest

weight of the evidence and thus violate his due process rights. (ECF No. 1, PageID# 5.) The Warden maintains that this claim is procedurally defaulted and, in the alternative, a manifest weight of the evidence claim is a state law claim not cognizable on federal review. (ECF No. 9, PageID # 21-23; 24-26.) For the following reasons, both of the Warden's arguments are well-taken.

### 1. Procedural Default

While Davis raised a manifest weight of the evidence claim on direct review in the Third District Court of Appeals, he failed to raise it in his appeal to the Supreme Court of Ohio. The Sixth Circuit has recognized that a petitioner commits a procedural default by failing to present his claim to the Supreme Court of Ohio. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) ("Because Petitioner failed to fairly present this issue to the Ohio Supreme Court, the claim is procedurally defaulted.") Here, Davis's manifest weight of the evidence claim is therefore procedurally defaulted on this basis.

Nor has Davis argued or shown: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law;" or (2) "failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. Specifically, Davis cannot demonstrate "cause" because he has offered no explanation as to an objective factor external to the defense that impeded his efforts to comply with the state procedural rule. *Murray v. Carrier,* 477 U.S. 478, 488. And Davis has not argued and cannot show actual prejudice because he failed to present any argument that the result of the proceeding would have been different. *Id.* Finally, no "fundamental miscarriage of justice" is at issue here because Davis failed to make that argument, much less introduce any new, reliable evidence that was not presented at trial and would establish that he is "actually innocent" of the offenses. *See Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

### 2. *Cognizability*

Even if Davis's manifest weight of the evidence claim was not procedurally defaulted, his claim still fails because it is not cognizable on federal habeas review; indeed, an argument that a conviction was against the manifest weight of evidence is a *state law* argument. *See Gibson v. Miller*, 5:15-cv-119, 2016 WL 6277229, at *1 (N.D. Ohio Oct. 27, 2016) ("[C]ontentions that a conviction is contrary to the manifest weight of the evidence also do not raise cognizable claims.") (citing *Jackson v. Virginia,* 443 U.S. 307, 319 (1978)); *Schwartzman v. Gray*, No. 17-3859, 2018 U.S. App. LEXIS 27193, at *8 (6th Cir. 2007) ("A manifest-weight-of-the-evidence claim in Ohio is a state-law claim that is similar to but ultimately different from a federal constitutional claim that the evidence was insufficient to support a conviction."). Under Ohio law, an argument that a conviction is against the manifest weight of the evidence "requires the appellate court to act as a 'thirteenth juror' and review the entire record, weigh the evidence, and consider the credibility of witnesses to determine whether 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Hess v. Eberlin*, No. 2:04-cv-1144, 2006 WL 2090093, at *6 (S.D. Ohio Jan. 17, 2006) (citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1983)). Because a federal habeas court does not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review, this Court cannot consider whether Davis's conviction was against the manifest weight of the evidence. Accordingly, I recommend that this Court deny Davis's Ground Two claim because it is both procedurally defaulted and not cognizable on federal review.

### C.    <u>Ground Three: Ineffective Assistance of Counsel at Trial</u>

In Ground Three, Davis argues that his trial counsel was ineffective, in violation of the Sixth and Fourteenth Amendments, because "trial counsel failed to object to hearsay statements during trial, failed to conduct critical voir dire, and trial counsel failed to file essential motions, such as a timely motion to sever the prejudicial counts, among other errors." (ECF No. 1, PageID # 5-6.) The

Warden argues that Davis's ineffective assistance claim fails because he cannot establish both prongs of a *Strickland* claim, and it also fails under the doubly deferential judicial review that applies to a *Strickland* claim under the § 2254(d) standard. (ECF No. 9, PageID # 84-88.) For the following reasons, the Warden's arguments are well-taken.

The Sixth Circuit has recognized that, under *Strickland v. Washington*, 466 U.S. 668, (1984), a violation of the right to effective assistance of counsel has two components:

> ***First***, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. ***Second***, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Wickline v. Mitchell,* 319 F.3d 813, 819 (6th Cir. 2013) (quoting *Strickland,* 466 U.S. at 687) (emphasis added)). Under *Strickland,* "[r]eview of counsel's performance is highly deferential and requires that courts indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689. To demonstrate that counsel's performance was deficient, a "defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. To establish prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Additionally, "there is no question that *Strickland* qualifies as clearly established federal law under AEDPA." *Wickline,* 319 F.3d at 819 (citing *Williams v. Taylor*, 529 U.S. 362, 391 (2000)).

When the state court reaches the merits of an ineffective assistance of counsel claim, federal habeas court provide AEDPA deference to that adjudication under § 2254(d). *Perkins v. McKee,* 411 F. App'x 822, 828 (6th Cir. 2011). The U.S. Supreme Court has recognized that "[w]hen a

federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter,* 562 U.S. 86, 99 (2011).  The Supreme Court in *Harrington* also emphasized the double layer of deference that federal courts must give state courts in reviewing federal ineffective assistance of counsel claims under AEDPA:

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. … An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. … Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  **When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.**

*Perkins,* 411 F. App'x at 828 (quoting *Harrington,* 131 S.Ct. 770, 786-88) (emphasis added)).

Davis's ineffective assistance of trial counsel arguments asserted in his petition mirror the argument he previously made to the Third District Court of Appeals.  The appeals court reasonably rejected this argument, finding that Davis failed to show that his counsel's performance fell below an objective standard of reasonableness and setting forth its reasoning as follows:

> {¶ 74} In his third assignment of error, Appellant argues that his trial counsel was ineffective, in part, because trial counsel failed to object to hearsay statements during trial. For the reasons that follow, we disagree.
>
> ### Standard of Review
>
> {¶ 75} "'When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that the counsel's representation fell below an objective standard of reasonableness.'" *State v. Sanders*, 94 Ohio St.3d 150, 151, 761 N.E.2d 18 (2002) quoting *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Additionally, "'[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.'" *Id.*, at 694, 104 S.Ct. 2052. *See also, State v. Bradley*, 42 Ohio St.3d 136, 137, 538 N.E.2d 373 (1989).

{¶ 76} In analyzing a claim for ineffective assistance of counsel, this court's scrutiny of counsel's performance must be highly deferential, with a "'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Bradley, supra*, at 142, 538 N.E.2d 373, quoting *Strickland, supra*, at 687-88, 104 S.Ct. 2052. "Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." *Id.*

### Analysis

{¶ 77} At the outset, we note that Appellant, during the course of the proceedings below, had five (5) different attorneys represent him. Interestingly, Appellant does not specify which trial counsel was ineffective. However, it appears from this assignment that Appellant questions the effectiveness of his trial counsel.

{¶ 78} Appellant initially argues that his trial counsel was ineffective because trial counsel failed to object to any of the hearsay regarding Appellant residing in the residence during the raid by police officers, as charged in case number CR 2015 0361. However, we note that the failure to make objections is not alone enough to sustain a claim of ineffective assistance of counsel. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 103. *See also, State v. Holloway*, 38 Ohio St.3d 239, 244, 527 N.E.2d 831 (1988) (failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel); *State v. Gumm*, 73 Ohio St.3d 413, 428, 653 N.E.2d 253 (1995) holding modified by *State v. Wogenstahl*, 75 Ohio St.3d 344, 662 N.E.2d 311 (1996) (the failure to make objections does not constitute ineffective assistance of counsel per se, as that failure may be justified as a tactical decision).

{¶ 79} Next, Appellant argues that his trial counsel's performance was ineffective because trial counsel did not voir dire Sergeant Dana Sutherland ("Sutherland"), the State's marijuana expert witness. This argument lacks merit for two reasons. First, the record reveals, and the Appellant concedes, that trial counsel objected to the expert being certified as an expert witness, and the trial court overruled the objection. (*See*, Trial Tr., Vol. II, at 286). And second, the record reveals that the Appellant's concerns with Sutherland's qualifications to testify as an expert were addressed by the trial court prior to trial. (Trial, 08/01/2017 Tr., Vol. I, at 11). Given the trial court's rulings, we do not find that Appellant's trial counsel's performance fell below an objective standard of reasonable representation under the facts presented.

{¶ 80} Lastly, Appellant argues that trial counsel was ineffective because his trial counsel failed to file a proper motion to sever the counts at the appropriate time during trial. However, the record is clear, and the Appellant concedes, that objections to the State's motions to consolidate were made and a motion to sever was filed prior to trial. (*See*, CR 2014 0118, Doc. No. 139; CR 2015 0361, Doc. No. 48). Despite Appellant's objections and motion, the trial court found that the charges were of similar character and part of a common scheme or course of criminal conduct, then consolidated the cases and joined them for purposes of trial. (CR 2014 0118, Doc. No. 163; CR 2015 0361, Doc. No. 82).  Thus, because the trial court had

already ruled on Appellant's motion to sever, Appellant has failed to demonstrate that a subsequent trial counsel's performance fell below an objective standard of reasonableness by failing to file an additional motion to sever, and we overrule Appellant's third assignment of error in its entirety.

(ECF No. 9-1, Exhibit 55, PageID # 485-88); *Davis,* 2018-Ohio-4368, at ¶¶ 74-80.)

Here, there is a reasonable argument that Davis's counsel satisfied *Strickland's* deferential standard based on the Third District's conclusion that trial counsel's performance did not fell below an objective standard of reasonableness because: (1) the failure to make hearsay objections is not enough to support an ineffective assistance of counsel claim, and that failure may be justified as a tactical decision; (2) the trial court overruled trial counsel's objection at trial regarding the certification of Sergeant Dana Sutherland as an expert witness, and Davis's concerns with Sutherland's qualifications to testify were addressed by the trial court prior to trial; and (3) the trial court denied Davis's motion to sever the counts at trial, and prior to trial the court granted the State's consolidation based on its finding that the charges asserted against Davis were of similar character and part of a common scheme. *See Lundgren,* 440 F.3d at 775 (noting that counsel's failure to object is not usually deficient performance because "experienced trial counsel learn that objections to each potentially objectionable event could actually act to their parties detriment, so "learned counsel therefore use objections in a tactical manner."); *Kittka v. Franks,* 539 F. App'x 668, 674 (6th Cir. 2013) (trial counsel's performance is not ineffective for "failing to make a futile objection"). Nor can Davis establish prejudice because he makes no argument that there is a reasonable probability that, but for counsel's unprofessional errors, that the result of the proceedings would have been different. *See Strickland,* 466 U.S. at 689.

Moreover, wholly absent from Davis's Petition is *any* argument that the Third District Court of Appeals' ruling was unreasonable. *See Mahady v. Cason,* 367 F.Supp.2d 1107, 1117 (E.D. Mich. 2005) (ruling that the state courts' denial of relief did not result in decisions that were contrary to

*Strickland* because "Petitioner has failed to show that his attorney's performances were deficient and that any deficiencies in their performances prejudiced the defense or appeal"). Accordingly, I recommend that the Court deny Davis's Ground Three claim.

### D.  **Ground Four:  Speedy Trial**

In Ground Four, Davis asserts that he was denied his Sixth Amendment right to a speedy trial based on his contention that "the continuance granted the State is unreasonable, the record journal entry is mandatory when an Ohio trial court sets a continuance beyond the protected liberty interest proscribed by R.C. 2945.71, and congested dockets are unreasonable under R.C. 2945.72(H) when not journalized prior to the expiration of time limits set by R.C. 2945.71(c) (2) and (E)." (ECF No. 1, PageID # 6.) The Warden argues that this claim fails because Davis cannot establish that the Third District Court of Appeals' ruling was contrary to or an unreasonable application of clearly established federal law. (ECF No. 9, PageID # 50-55). For the reasons set forth below, I find that the Warden's argument is well-taken.

The Sixth Amendment to the United States Constitution guarantees a defendant a "speedy and public trial[.]" U.S. Const. amend. VI; *Barker v. Wingo*, 407 U.S. 514, 515 (1972). In *Barker*, the Supreme Court refused to establish a set number of days constituting a violation of the speedy trial right. *Id.* at 523. Instead, the Court established a balancing test in which the conduct of both the prosecution and the defendant are weighed to assess whether a speedy trial violation has occurred based on the length of the delay between the date of indictment or arrest (whichever is earlier) and the date of trial. *Id.* at 530; *United States v. Marion*, 404 U.S. 307, 320-21 (1971). The following four factors are to be considered under this balancing test: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant. *Barker*, 407 U.S. at 530; *see also Doggett v. United States*, 505 U.S. 647, 651 (1992).

Ohio courts evaluate the state speedy trial provisions found in Ohio Revised Code §

2945.71 *et seq.*, which are considered coextensive with the Sixth Amendment speedy trial requirement. *Brown v. Bobby*, 656 F.3d 325, 330 (6th Cir. 2011) (citing *State v. O'Brien*, 34 Ohio St.3d 7, 9, 516 N.E.2d 218, 220 (1987) and *State v. Pachay*, 64 Ohio St.2d 218, 416 N.E.2d 589, 591 (1980)). Ohio Revised Code § 2945.71 provides that a person shall be brought to trial within 270 days after arrest, and that, for purposes of computing time, "each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days." R.C. § 2945.71(C)(2) & (E). Section 2945.72 lists instances in which the time limit for bringing an accused to trial may be tolled, including "[t]he period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion[.]" R.C. § 2945.72(H). "[A]ny time an Ohio court reviews the implementation of a speedy trial statute, it is guided not just by those provisions, but also by the dictates of the Sixth Amendment whether or not it expressly applies the factors laid out in *Barker*." *Brown*, 656 F.3d at 331.

An accused may waive his constitutional right to a speedy trial, if he does so knowingly and voluntarily. *Barker*, 407 U.S. at 529. "[F]ollowing an express written waiver of unlimited duration by an accused of his speedy trial rights the accused is not entitled to a discharge for delay in bringing him to trial unless the accused files a formal written objection to any further continuances and makes a demand for trial, following which the state must bring him to trial within a reasonable time." *O'Brien*, 34 Ohio St. 3d at 9, 516 N.E.2d at 221.

Because AEDPA deference applies to a state appellate court's speedy trial analysis of federal habeas review, a court:

> need not go into too great of depth in considering [the *Barker*] factors, **but instead should simply ascertain whether the state court's decision constituted an unreasonable application of clearly established federal law**. *See* 28 U.S.C. § 2254(d)(1). A decision can "unreasonably apply" federal law if "the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular

state prisoner's case," or if "the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407, 120 S.Ct. 1495. This court is not concerned with whether the state court ruled erroneously or incorrectly, but rather with whether the state court decision was "objectively unreasonable." *See Lordi v. Ishee*, 384 F.3d 189, 195 (6th Cir. 2004); *Cyars v. Hofbauer*, 383 F.3d 485, 493 (6th Cir. 2004); *McAdoo v. Elo*, 365 F.3d 487, 493 (6th Cir. 2004).

*Brown*, 656 F.3d at 332-33 (emphasis added).

Here, Davis's speedy trial argument in his petition mirrors the argument he previously made to the Third District Court of Appeals. The appeals court reasonably rejected Davis's argument based on its finding that the trial court's continuance was reasonable, setting forth its reasoning as follows:

{¶ 81} In his fourth assignment of error, Appellant argues that the trial court erred by denying his motion to dismiss his cases based upon a speedy trial violation. Specifically, Appellant argues that the continuance granted at the request of the State beyond the February 21, 2017 trial date was unreasonable. For the reasons that follow, we disagree.

### Standard of Review

{¶ 82} "Our standard of review upon an appeal raising a speedy trial issue is to count the expired days as directed by R.C. 2945.71, et seq." *State v. King*, 3rd Dist. Marion No. 9-06-18, 2007-Ohio-335, 2007 WL 209990, ¶ 30. *See also*, 884 State v. DePue, 96 Ohio App.3d 513, 516, 645 N.E.2d 745 (4th Dist.1994). "If any ambiguity exists, we construe the record in favor of the accused." *Id.*

{¶ 83} The applicable statutory speedy trial provision, R.C. 2945.71(C)(2), provides that a person charged with a felony shall be brought to trial within two hundred and seventy (270) days after the person's arrest. R.C. 2945.71(C)(2). In computing time under division (C)(2), "each day during which the accused is held in jail in lieu of bail on the pending charges shall be counted as three days." R.C. 2945.71(E).

{¶ 84} Further, R.C. 2945.73(B) provides:

Upon motion made at or prior to the commencement of trial, a person charged with an offense shall be discharged if he is not brought to trial within the time required by sections 2945.71 and 2945.72 of the Revised Code.

R.C. 2945.73(B). "R.C. 2945.71 and R.C. 2945.73 are 'mandatory and must be strictly complied with by the State.'" *King* at ¶ 32, quoting *State v. Pudlock*, 44 Ohio St.2d 104, 105, 338 N.E.2d 524 (1975). "However, R.C. 2945.72 allows for an extension of the time that the

accused must be brought to trial under certain circumstances." *Id.*

***Analysis***

{¶ 85} In the instant matter, both the State and Appellant agree that Appellant's speedy trial rights were upheld throughout the proceedings up until Appellant's scheduled jury trial on February 21, 2017. However, at the request of the State, Appellant's trial was rescheduled for May 16, 2017, outside of the Appellant's statutory speedy trial period. Thus, the question before us is not whether Appellant was brought to trial within the statutorily permitted time frame, but rather, was the speedy trial violation permissible under the circumstances of the case. We answer that question in the affirmative.

{¶ 86} R.C. 2945.72, entitled "extension of time for hearing or trial," allows for an extension of time that the accused must be brought to trial under certain circumstances. R.C. 2945.72(H) provides:

> The time within which an accused must be brought to trial, or, in the case of felony, to preliminary hearing and trial, may be extended only by the following:

* * *

> (H) The period of any continuance granted on the accused's own motion, and the period of any *reasonable* continuance granted other than upon the accused's own motion.

(Emphasis added). R.C. 2945.72(H).

{¶ 87} The resolution of this issue, therefore, depends upon whether the trial court's continuance was reasonable. "Determining the 'reasonableness' of the continuance beyond the ninety-day stricture of R.C. 2945.71, invariably, 'depends on the peculiar facts and circumstances of a particular case.'" *State v. Glass*, 3rd Dist. Auglaize No. 2-04-01, 2004-Ohio-4402, 2004 WL 1874574, ¶ 10, quoting *State v. Saffell*, 35 Ohio St.3d. 90, 91, 518 N.E.2d 934 (1988). "'In addition, precedent requires that such a continuance be necessary under the circumstances of the case.'" *Id.* quoting *Saffell*, 35 Ohio St.3d. 90, 91, 518 N.E.2d 934 (1988) citing *City of Aurora v. Patrick*, 61 Ohio St.2d 107, 108-09, 399 N.E.2d 1220 (1980).

{¶ 88} On February 3, 2017, the State requested a continuance of the trial date, due to the Ohio Supreme Court's decision in *State v. Gonzales. See, State v. Gonzales*, 150 Ohio St.3d 261, 2016-Ohio-8319, 81 N.E.3d 405, reconsideration granted, decision vacated, 150 Ohio St.3d 276, 2017-Ohio-777, 81 N.E.3d 419, reconsideration denied, 149 Ohio St.3d 1409, 2017-Ohio-2822, 74 N.E.3d 466. In *Gonzales*, the Ohio Supreme Court held that the offense level for possession of cocaine was determined only by the weight of the actual cocaine, not by the total weight of cocaine plus any filler. *Id.* at ¶ 22. This opinion was inconsistent with prior case law on the same topic. *Id.* at ¶ 51. Given the new purity requirements, the State requested a continuance to send Appellant's cocaine to a lab equipped to determine the weight of actual cocaine, separate from the filler weight.

{¶ 89} The trial court, on February 9, 2017, granted the State's request for a continuance and

set Appellant's jury trial for May 16, 2017. (Case number CR 2014 0118, Doc. No. 182; case number CR 2015, Doc. No. 109). In granting the continuance, the trial court acknowledged that *State v. Gonzales* was a significant departure from previous precedent and custom. Furthermore, the trial court relied on the Seventh District Court of Appeal's decision in *State v. High*, wherein the Appellate court held that an extension request by the State for testing of evidence was reasonable. *State v. High*, 143 Ohio App.3d 232, 242, 757 N.E.2d 1176 (2001).

{¶ 90} We find that the continuance was reasonable in light of the need for additional time to conduct testing (of the drugs in question) in accordance with *Gonzales*. While Appellant argues that the State took "too long" (after the Gonzales decision was announced) to request the continuance, we find that the State's request was made prior to the already scheduled jury trial.

{¶ 91} Appellant further argues that the continuance was unreasonable because the trial court focused on its schedule in denying Appellant's motion to dismiss. However, "scheduling and docketing conflicts have been held to be reasonable grounds for extending an accused's trial date beyond the speedy trial limit date by both [the Appellate Court] and the Supreme Court of Ohio. *Glass*, 3rd Dist. Auglaize No. 2-04-01, 2004-Ohio-4402, ¶ 11. *See also, State v. Lee*, 48 Ohio St.2d 208, 210, 357 N.E.2d 1095 (1976) (continuance due to "crowded docket & judge's conference" was reasonable). Thus, we find that the continuance was reasonable, and therefore met the exception requirement listed in R.C. 2945.72(H).

{¶ 92} For the foregoing reasons, we find Appellant's fourth assignment of error not well taken and overrule the same.

(ECF No. 9, PageID # 488-91); *see also Davis,* 2018-Ohio-4368 ¶¶ 81-92.)

Davis has not established – much less offered any argument - that the Third District Court of Appeals' speedy trial ruling constituted an unreasonable application of clearly established law. And a deferential review of the Third District Court of Appeals' speedy trial ruling reveals that the state court was not unreasonable in its determination that the delay in bringing Davis to trial did not violate the Constitution because: (1) Davis – represented by five different counsel throughout the proceeding - filed numerous motions for a continuance, and he waived his right to a speedy trial on several occasions; (2) the State's continuance was made prior to the already scheduled jury trial, and the continuance was reasonable in light of the additional time to conduct testing of the drugs in question, in accordance with *Gonzales;* and (3) scheduling and docketing conflicts are reasonable grounds under state law for extending an accused trial date beyond the speedy trial limit date. *Id.; see also*

*Brown v. Bobby,* 656 F.3d 325, 337 (6th Cir. 2011) (affirming judgment of district court that speedy trial violation was not an unreasonable application of clearly established law because "it is not clear that the state is more to blame for the delay or that Brown was prejudiced by the delay," and "even if one assumes that the state is more to blame, Brown was not blameless and in fact was responsible for a significant portion of the delay."). Accordingly, I recommend that the Court deny Davis's Ground Four claim because the Third District Court of Appeals' speedy trial ruling was not an unreasonable application of clearly established federal law.

### E. Ground Five: Evidentiary Issue

In Ground Five, Davis alleges that the trial court violated his due process rights by abusing its discretion in permitting testimony from an expert, despite a violation of Ohio Criminal Rule 16(K). (ECF No. 1, PageID# 6.) The Warden argues that this claim fails because Davis cannot show that the allegedly erroneous evidentiary ruling result in the denial of fundamental fairness and, therefore, a violation of due process. (ECF No. 9, PageID# 65-69.) For the reasons set forth below, I find the Warden's argument is well-taken.

The Sixth Circuit has recognized that a federal court's review of state evidentiary issues is "extremely limited," and "errors in the application of state law, especially rulings regarding the admission or exclusion of evidence, are usually not to be questioned in a federal habeas corpus proceeding." *Waters v. Kassulke*, 916 F.2d 329, 335 (6th Cir. 1990) (citing *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir.1988)). Indeed, such errors will result in the grant of a habeas writ "only if they result in the denial of fundamental fairness, thereby violating due process." *Waters,* 916 F.2d at 335.

Here, Davis's evidentiary argument in his Petition mirror the argument he previously presented to the Third District Court of Appeals. The appeals court reasonably rejected Davis's argument, setting forth its reasoning as follows:

{¶ 93} In Appellant's fifth assignment of error, Appellant argues that the trial court was

34

required to exclude Identification Officer Michael Carman's ("Carman") expert testimony, because the State did not comply with Crim.R. 16(K). For the reasons that follow, we find that the trial court did not err in allowing the State's expert witness to testify.

### Standard of Review

{¶ 94} "The trial court has broad discretion over evidentiary rulings, and such rulings will not be reversed on appeal absent an abuse of discretion." *State v. Workman*, 171 Ohio App.3d 89, 2007-Ohio-1360, 869 N.E.2d 713, ¶ 10 (3rd Dist.). *See also, In re Sherman*, 3rd Dist. Hancock No. 05-04-47, 2005-Ohio-5888, 2005 WL 2933064, ¶ 27. An "'abuse of discretion' implies that the trial court acted unreasonably, arbitrarily, or unconscionably." *Id.* quoting *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). "When applying the abuse-of-discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. *Dindal v. Dindal*, 3rd Dist. Hancock No. 5-09-06, 2009-Ohio-3528, 2009 WL 2159689, ¶ 6 citing *Blakemore, supra.*

### Analysis

{¶ 95} Appellant alleges that the State violated Crim.R. 16(K) when it failed to provide an expert witness' report prior to the start of Appellant's jury trial. Crim.R. 16(K) states:
An expert witness for either side shall prepare a written report summarizing the expert witness's testimony, findings, analysis, conclusions, or opinion, and shall include a summary of the expert's qualifications. The written report and summary of qualifications shall be subject to disclosure under this rule no later than twenty-one days prior to trial, which period may be modified by the court for good cause shown, which does not prejudice any other party. Failure to disclose the written report to opposing counsel shall preclude the expert's testimony at trial. Crim.R. 16(K). Additionally, Crim.R. 16(L), entitled regulation of discovery, goes on to provide:

> The trial court may make orders regulating discovery not inconsistent with this rule. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances.

Crim. R. 16(L).

{¶ 96} Initially, we note that the State concedes that they should have provided Appellant with an expert report prior to Appellant's jury trial, pursuant to Crim. R. 16(K). We also note that the Appellant does not allege that the exclusion of Carman's testimony would have changed the outcome of the trial. Rather, Appellant argues that Carman's testimony was "very important" to the State's case and its inclusion (over objection) warrants him a new trial. Appellant directs this Court to the Eleventh District Court of Appeal's decision in *State v. McGhee*. *State v. McGhee*, 11th Dist. Trumbull No. 2014-T-0106, 2017-Ohio-5773, 2017 WL 2951775. In *McGhee*, the Eleventh District held that the purpose of Crim.R. 16(K) is to prevent surprise and trial by ambush. Id. at ¶ 19. While the State, in *McGhee*, had provided

their expert witness' name to defense counsel at the appropriate time, it had failed to provide the expert's report to defense counsel until a couple days prior to trial. *Id.* Finding that the expert testimony was "vital" to the State's case, the court of appeals reversed the defendant's conviction and ordered a new trial. *Id.* at ¶¶ 20 -21.

{¶ 97} However, Appellant's reliance on *McGhee* ignores precedent from this Court regarding the failure to provide an expert report. Specifically, in *State v. Opp*, under circumstances factually similar to the case sub judice, the State failed to provide an expert report. *State v. Opp*, 3rd Dist. Seneca No. 13-13-33, 2014-Ohio-1138, 2014 WL 1339836, ¶ 7. Relying, in part, on the Fifth District's decision in *State v. Viera*, we concluded that while Crim.R. 16(K) contains mandatory language for compliance, such language, when read in context with Crim.R. 16(L), does not abolish the trial court's discretion in regards to evidentiary matters. Id. at ¶ 10. *See, State v. Viera*, 5th Dist. Delaware No. 11CAA020020, 2011-Ohio-5263, 2011 WL 4840981, ¶¶ 21-23 (Appellate court found that the trial court did not err in allowing an expert to testify in spite of an untimely expert's report). We then went on to analyze other cases involving a discovery violation with respect to an expert's report in accordance with Crim.R. 16(K). *Opp*, after its examination of precedent from various appellate courts in Ohio, found that while the State committed a discovery violation, that trial court did not err in allowing the State's expert witness to testify on a very limited issue which did not prejudice the defendant. *Id.* at ¶ 20.

{¶ 98} Relying on *Opp*, we find that the trial court did not err in allowing the State to present Carman's limited expert testimony at trial. Specifically, the record reveals that Carman was not testifying on the specifics of the case at hand, but rather, provided testimony regarding his experience, in general, involving why fingerprints may or may not exist on a handgun. (Trial, 08/02/2018 Tr., Vol. I, at 209). Moreover, the trial court specifically found that Carman was not testifying about the evidence in Appellant's case, but merely on generalities involving a lack of fingerprints on a handgun. (*Id.*). Accordingly, we find that the trial court did not abuse its discretion by overruling Appellant's Crim.R. 16(K) objection.

{¶ 99} Lastly, even if we were to find that the trial court erred in admitting Carman's testimony, we would affirm the ruling under the harmless error doctrine. Harmless error is "'any error, defect, irregularity, or variance, which does not affect [a] substantial right[ ] [* * *]' ". *State v. Wilson*, 3rd Dist. Allen No. 1-09-53, 2010-Ohio-2947, 2010 WL 2557755, ¶ 26 quoting Crim.R. 52(A). Furthermore, "harmless error does not affect the outcome of the case and, thus, does not warrant a judgment to be overturned or set aside." *Id.*

(ECF No. 9-1, Exhibit 57, PageID# 494-100); *see also Davis,* 2018-Ohio-4368 ¶¶ 93-99.)

Here, Davis fails to argue – much less establish - that the admission of the expert's testimony

denied him a fundamentally fair trial, warranting habeas relief based on a due process violation. *Cf.*

*Waters,* 916 F.2d at 335-336 (holding that it was error to admit the expert's testimony, but this error

did not render the trial fundamentally unfair because there was substantial evidence, absent the expert's

statement, that the petitioner had committed the crime).  Accordingly, I recommend that the Court deny Davis's Ground Five claim.

### F.  <u>Ground Six: Case Consolidation</u>

In Ground Six of his Petition, Davis maintains that the state court abused its discretion and violated his due process rights by "consolidating two trials for separate and distinct cases" and asserts he was "subjected to substantial prejudice where the elements of the offenses charged, and those underlying controlling facts of the conjoined cases, were not 'simple' or 'direct.'' (ECF No. 1, PageID# 6.)  The Warden argues, in part, that Davis is not entitled to relief because he failed to show that he suffered any prejudice from the joinder.  (ECF No. 9, PageID # 71.)  For the reasons set forth below, I find that the Warden's argument is well-taken.

The Sixth Circuit has recognized that "the United States Supreme Court has held that misjoinder of offenses can cause prejudice amounting to a violation of a defendant's right to a fair trial under the Fifth Amendment, but that '[i]mproper joinder does not, in itself, violate the Constitution.'" *Collins v. Green,* 838 F. App'x 161, 167 (6th Cir. 2020) (citing *United States v. Lane*, 474 U.S. 438, 446 n.8 (1986)).  The Supreme Court has further recognized that joinder of offenses serves to "'conserve state funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial.'" *Collins,* 838 F. App'x at 167 (quoting *Lane,* 474 U.S. at 449)).  The Supreme Court concluded, therefore, that "improper joinder only violates the Constitution if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." *Collins v. Green,* 838 F. App'x 161, 167 (6th Cir. 2020) (citing *United States v. Lane,* 474 U.S. at 446 n.8).

Here, Davis's joinder argument in his Petition mirrors the argument he previously made to the Third District Court of Appeals.  The appeals court reasonably rejected this argument based on its finding that Davis suffered no prejudice by the joinder, setting forth its reasoning as follows:

{¶ 101} In his sixth assignment of error, Appellant argues that the trial court erred by

consolidating his two trials. Specifically, Appellant argues that the evidence was not "simple and direct," which would permit joinder of the cases. We disagree.

### Standard of Review

{¶ 102} "A defendant who asserts that joinder is improper has the burden of making an affirmative showing that his rights will be prejudiced thereby." *State v. Shurelds*, 3rd Dist. Allen No. 1-91-28, 1992 WL 147559, *2, cause dismissed, 66 Ohio St.3d 1430, 608 N.E.2d 760 (1993). Furthermore, a defendant "must demonstrate that the trial court abused its discretion in refusing to separate the charges for trial." *State v. Torres*, 66 Ohio St.2d 340, 343, 421 N.E.2d 1288 (1981). An "'abuse of discretion' implies that the trial court acted unreasonably, arbitrarily, or unconscionably." *Id.* quoting *Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). "When applying the abuse-of-discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court." Id. Absent a clear showing of abuse of discretion, a trial court's decision regarding joinder will not be disturbed. Torres, supra.

### Analysis

{¶ 103} Crim.R. 13, entitled "trial together of indictments or information or complaints," provides the statutory authority for joinder, which states:

> The court may order two or more indictments or informations or both to be tried together, if the offenses or the defendants could have been joined in a single indictment or information. The procedure shall be the same as if the prosecution were under such single indictment or information.

> The court may order two or more complaints to be tried together, if the offenses or the defendants could have been joined in a single complaint. The procedure shall be the same as if the prosecution were under such single complaint.

Crim.R. 13.

{¶ 104} In determining whether the indictments could have been joined in a single indictment, Crim.R. 8(A) states: "[t]wo or more offenses may be charged in the same indictment, * * * if the offenses charged, * * * are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." Crim.R. 8(A).

{¶ 105} In examining the purposes and policies behind joinder, courts have expressed that: "[j]oinder and the avoidance of multiple trials are favored to conserve judicial resources, including time and expense, reduce the chance of incongruous results in successive trials before different juries, and diminish inconvenience to the witnesses." *State v. Clifford*, 135 Ohio App.3d 207, 211, 733 N.E.2d 621 (1st Dist.1999), cause dismissed, 87 Ohio St.3d 1422, 717 N.E.2d 1108 (1999). "To prevail on a claim that the trial court erred in consolidating charges for trial, the defendant must demonstrate affirmatively (1) that his rights were

prejudiced, (2) that at the time that the trial court ruled on the motion to consolidate, he provided the court with sufficient information so that it could weigh the considerations favoring joinder against the defendant's right to a fair trial, *and* (3) that given the information provided to the court, it abused its discretion in consolidating the charges for trial." (Emphasis added). *Id.*

{¶ 106} In reviewing Appellant's argument, we find that the Appellant failed to demonstrate affirmatively exactly how his rights were prejudiced by joinder. Even though Appellant argues that questions exist concerning his actual dominion and control over items of contraband, we find this argument addresses the sufficiency of the evidence, not whether Appellant was prejudiced by the joinder of the cases.

{¶ 107} Next, Appellant argues that the evidence in one case would not have been admissible in the other case. However, this is not the standard for joinder announced in Crim.R. 13 or Crim.R. 8(A).

{¶ 108} Lastly, Appellant argues that "it is undeniable that juries do not like fugitives." (See, Br. of Appellant at 18). Appellant then argues that this fact, standing alone, was sufficient to establish that the trial court abused its discretion by joining the two cases. However, Appellant provides us no support for such assertion. Thus, when reviewed in its entirety, Appellant's argument fails to demonstrate affirmatively that his rights were prejudiced and thus, Appellant has failed to demonstrate that the trial court erred in joining the two cases.

{¶ 109} For the reasons set forth above, we overrule Appellant's sixth assignment of error.

(ECF No. 9-1, Exhibit 57, PageID# 497-500); *see also Davis,* 2018-4368 ¶¶ 101-08.

In *Collins,* the Sixth Circuit found that the petitioner's argument that he sustained prejudice as a result of improper joinder was "compelling," but ultimately held that AEDPA compels federal courts to give "substantial deference" to the state appeals court, and the petitioner "has not surmounted that hurdle." *Collins,* 838 F. App'x at 172-73 ("Applying AEDPA deference, the Kentucky Supreme Court's decision must be more than 'simply erroneous or incorrect,' it must be 'objectively unreasonable.' Defendant has not met that standard.") Here, unlike in *Collins,* Davis fails to argue – much less establish - that the joinder of his two Allen County Court of Common Pleas criminal cases resulted in prejudice so great as to deny him his Fifth Amendment right to a fair trial, nor that the Third District Court of Appeals' ruling was objectively unreasonable. Accordingly, I recommend that this Court deny Ground Six claim.

### G. **Grounds Seven and Eight: Fourth Amendment**

Finally, Davis asserts that the trial court violated his due process rights under the Fifth, Sixth, and Fourteenth Amendments because "the State trial court committed an abuse of discretion by denying" Petitioner's motions to suppress.  (ECF No. 1, PageID # 6.)  In support of his Ground Seven claim in Case Number CR 2014 0018, Davis argues that: (1) law enforcement lacked probable cause or reasonable suspicion of criminal activity to detain him; (2) law enforcement impermissibly detained him after he chose not to engage police officers and instead walked away; and (3) the search of the vehicle occurred prior to the arrest.  (ECF No. 1, PageID # 6.)  In support of his Ground Eight claim, Davis argues that law enforcement officials lacked probable cause for the search of the residence located at 122 Catalpa Street. (*Id.*) The Warden maintains that Counts 7 and 8 are not cognizable on federal review because Davis had the opportunity to fully and fairly litigate his Fourth Amendment claim in the Ohio courts.  (ECF No. 9, PageID # 72-74.)  For the reasons set forth below, the Warden's argument is well-taken.

Generally, a writ of habeas corpus cannot be granted on the ground that a petitioner's Fourth Amendment rights were violated if the petitioner had an opportunity to present the claim in state court. *Stone v. Powell*, 428 U.S. 465, 494 (1976); *Wallace v. Kato*, 549 U.S. 384, 395 n.5 (2007); *accord Ewing v. Ludwick*, 134 F. App'x 907, 911 (6th Cir. 2005). Indeed, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced in his trial." *Powell* at 494. Full and fair litigation requires the court to consider: (1) "whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim" and (2) "whether presentation of the claim was in fact frustrated because of a failure of that mechanism." *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982) (citations omitted). If there was an opportunity to raise the claim and the presentation was not

frustrated, the petitioner's claim is non-cognizable. *See id.*

The Sixth Circuit Court of Appeals has explained that the *Powell* "opportunity for full and fair consideration" means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim. *Good v. Berghuis*, 729 F.3d 636, 639 (6th Cir. 2013). Thus, "[i]n the absence of a sham proceeding, there is no need to ask whether the state court conducted an evidentiary hearing or to inquire otherwise into the rigor of the state judiciary's procedures for resolving the claim." *Id.* Rather, a court must "presume that, once a federal claim comes before a state court, the state judge will use a fair procedure to achieve a just resolution of the claim." *Id.* In sum, the Sixth Circuit explained that, in considering whether a habeas petitioner had a full and fair opportunity to litigate his Fourth Amendment claim, the court asks: "Did the state courts permit the defendant to raise the claim or not?" *Id.* at 640.

Here, Davis was able to fully and fairly litigate his Fourth Amendment claims in the Ohio courts. The state court record shows that: (1) Davis's counsel filed a motion to suppress in both cases (ECF No. 9-1, Exhibits 25-26, PageID # 162-179); (2) the trial court denied the motions in written orders after conducting suppression hearings (*id.,* Exhibit 28, PageID # 193-94; Exhibit 32, PageID # 226-36); (3) Davis raised his Fourth Amendment claims on direct appeal to the Third District Court of Appeals, and that court denied them (*id.,* Exhibit 59, PageID # PageID# 500-10); and (4) Davis also raised these claims in the Ohio Supreme Court, which declined to accept jurisdiction of the appeal (*id.,* Exhibit 59, PageID # 514-31; Exhibit 60, PageID # 532.) Moreover, in the last reasoned state court opinion, the Third District Court of Appeals reasonably determined on direct appeal:

> {¶ 110} Appellant argues that the trial court erred by denying his motions to suppress in each of his underlying cases. For the reasons that follow, we disagree.

41

*Standard of Review*

{¶ 111} "A review of the denial of a motion to suppress involves mixed questions of law and fact." *State v. Lewis*, 2017-Ohio-996, 86 N.E.3d 974, ¶ 8 (3rd Dist.) citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. At a suppression hearing, the trial court assumes the role of trier of fact, and as such, is in the best position to evaluate the evidence and the credibility of witnesses. *Id.* "An appellate court must accept the trial court's findings of facts if they are supported by competent, credible evidence." *Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*

*Analysis – Motion to Suppress in Case Number CR 2014 0118*

{¶ 112} Appellant argues that in case number CR 2014 0118, law enforcement officials lacked probable cause or reasonable suspicion of criminal activity to detain Appellant. Appellant further argues that law enforcement officers impermissibly detained him after he chose not to engage Kunkleman (in conversation) and walked away from officers. And lastly, Appellant argues that the search of the vehicle started prior to his arrest. Appellant contends that these three factors, collectively, resulted in a violation of his Fourth Amendment rights.

{¶ 113} "The Fourth Amendment to the United States Constitution generally prohibits warrantless searches and seizures, and any evidence obtained during an unlawful search or seizure will be excluded from being used against the defendant." *Frye*, 2018-Ohio-894, 108 N.E.3d 564, ¶ 63. "Neither the Fourth Amendment to the United States Constitution nor Section 14, Article I of the Ohio Constitution explicitly provides that violations of its provision against unlawful searches or seizure will result in the suppression of evidence obtained as a result of such violation, but the United States Supreme Court has held that the exclusion of evidence is an essential part of the Fourth Amendment." *State v. Jenkins*, 3rd Dist. Union No. 14-10-10, 2010-Ohio-5943, 2010 WL 4962840, ¶ 9 citing *Mapp v. Ohio*, 367 U.S. 643, 649, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). The primary purpose of the exclusionary rule is to remove the incentive to violate the Fourth Amendment. *Id.* citing *State v. Jones*, 88 Ohio St.3d 430, 434, 727 N.E.2d 886 (2000) overruled on other grounds by *State v. Brown*, 99 Ohio St.3d 323, 2003-Ohio-3931, 792 N.E.2d 175 (2003).

{¶ 114} "The Fourth and Fourteenth Amendments to the United States Constitution prohibit any governmental search or seizure, including a brief investigative stop, unless supported by an objective justification." *State v. Andrews*, 57 Ohio St.3d 86, 87, 565 N.E.2d 1271 (1991) citing *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); *Reid v. Georgia*, 448 U.S. 438, 440, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980); *Terry v. Ohio*, 392 U.S. 1, 19, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

{¶ 115} However, in crafting exceptions to Fourth Amendment violation claims, "the United States Supreme Court [in Terry ] held that a police officer may stop and investigate unusual behavior, even without probable cause to arrest, when he reasonably concluded that the individual is engaged in criminal activity." Id. citing Terry, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "In assessing that conclusion, the officer 'must be able to point to

specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *Id.* quoting *Terry*, at 21, 88 S.Ct. 1868.

{¶ 116} Upon reviewing the record, we find that the State produced competent and credible evidence that the officers had specific and articulable facts, along with the rational inferences from those facts, to reasonably warrant the intrusion into Appellant's vehicle. The evidence produced at the suppression hearing demonstrated that law enforcement responded to a call that a suspicious vehicle (with its car alarm going off) was parked in the parking lot of 234 North Main Street in Lima, Ohio in the early morning hours of March 21, 2014. (Mot. to Suppress Hrg., 06/30/2016 Tr. at 8-9). Kunkleman, who was the first officer to respond to the call, testified that Appellant was out of the vehicle when he (Kunkleman) exited his vehicle, and refused to engage him (Kunkleman) in conversation. (Mot. to Suppress Hrg., 06/30/2016 Tr. at 10). Rather, Appellant turned back to the vehicle and started to lean into the driver's area, where Kunkleman was unable to observe what Appellant was doing with his hands. (*Id.*). Kunkleman also testified that when he approached Appellant's vehicle, he smelled an overwhelming odor of marijuana6 emanating from the vehicle. (*Id.*). Kunkleman then shined his flashlight into Appellant's vehicle and observed a digital scale laying on the driver's side floorboard. (*Id.* at 11). Kunkleman testified that as a result of Appellant's actions, the smell of marijuana, and the observation of a digital scale on the floorboard, he decided to detain Appellant for his safety. (*Id.* at 11-12).

{¶ 117} Hillard, who observed the interaction between Appellant with Kunkleman, testified that he smelled the odor of marijuana coming from Appellant's vehicle. (*Id.* at 42). Hillard testified that when he looked inside the vehicle he saw, in plain view, cellphones, a digital scale, and raw marijuana in the center console, as well as a brown paper bag partially sticking out from under the seat. (*Id.* at 42-43). Hillard opened the brown paper bag and saw what he believed to be crack cocaine in it. (*Id.* at 43). Based on what was located in the vehicle, Appellant was placed under arrest. (*Id.*).

{¶ 118} We find, upon the totality of the circumstances, that Kunkleman and Hillard had probable cause to suspect that criminal activity was afoot, warranting further investigation. We further find that the search was not based solely upon "an unlawful arrest" of the Appellant, but upon Appellant's actions, coupled with observations of the officers and the smell of raw marijuana. Thus, the trial court did not err in denying the motion to suppress based upon the warrantless search of the vehicle and the seventh assignment of error is overruled.

### *Analysis – Motion to Suppress in Case Number CR 2015 0361*

{¶ 119} Testimony from the suppression hearing in case number CR 2015 0361 revealed the following: On January 12, 2015, Godfrey, a member of the West Central Ohio Crime Task Force, received a telephone call from the landlord of 1222 Catalpa Street in Lima, Ohio regarding Appellant living in part of the duplex that was not rented to him.7 (Mot. to Suppress Hrg., 10/20/2018 Tr. at 6-7). Godfrey was further informed that a maintenance man for the Catalpa residence had attempted to inspect the residence but was denied entry by Appellant. (*Id.* at 8). Godfrey knew Appellant had active warrants for his arrest, so he set up a surveillance of 1222 Catalpa Street on January 13, 2015. (*Id.* at 8-9). On January 17, 2015,

Godfrey observed a Chrysler 300 in the driveway with temporary tags. (*Id.* at 10). When the Chrysler 300 left the residence, Godfrey followed the vehicle. (*Id.* at 11). The Ohio State Highway Patrol, in conjunction with the West Central Ohio Crime Task force, conducted a traffic stop of the vehicle due to a window tint violation. (Id.). Kunkleman, who was assisting Godfrey with 1222 Catalpa Street surveillance, spoke with the individuals in the Chrysler 300 and learned that they were visiting their friend "Ray" at the Catalpa residence in question. (*Id.* at 12). The passenger of the Chrysler identified "Ray" as Appellant, and informed officers that Appellant had been living at the address for about a month. (*Id*. at 12). Because of this information, Godfrey verified that Appellant had active warrants and then set up a perimeter around 1222 Catalpa Street to arrest Appellant. (*Id.)*.

{¶ 120} After the residence was surrounded, Godfrey knocked on the front door and ordered Appellant to come out. (*Id.* at 13). Instead, Appellant exited the rear of the house, but quickly ran back to the residence after observing law enforcement officials surrounding the duplex. (*Id*.). Officers eventually gained entry into the house, and the Appellant was arrested without incident. (*Id.* at 15). After Appellant's arrest, law enforcement officers conducted a protective sweep of the residence to make sure that there were no other individuals or threats within the house. (*Id*.). In conducting the protective sweep of the residence, law enforcement officials observed a black tent in one of the rooms. (*Id.*)*. Because the tent was large enough for someone to hide in, officers looked inside it, finding marijuana plants and a "grow operation" inside. (*Id.* at 15-16).

{¶ 121} Based on observing the marijuana grow tent in the residence, officers secured the residence and sought out a search warrant for the premises. (*Id.* at 17-18). The reviewing judge found probable cause and signed the affidavit/search warrant for the residence. (*Id.* at 39-40; State's Ex. 1). Based on the search of the residence, law enforcement officials found guns, drugs, electronics, I.D.'s, and paperwork. (*Id.* at 41; State's Ex. 1).

{¶ 122} "In *Payton* [*v. New York*], the United States Supreme Court concluded that 'for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within.'" *State v. Crawford*, 3rd Dist. Logan No. 8-04-21, 2005-Ohio-243, 2005 WL 126759, ¶ 24 quoting *Payton v. New York*, 445 U.S. 573, 603, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). "Under Payton, therefore, officers may effectuate an arrest warrant at a location when they believe that the subject of the warrant lives at a residence and that belief is supported by probable cause." *Id.* Appellant asserts that officers lacked probable cause to enter the premises. We find otherwise. Specifically, law enforcement received a tip that Appellant was residing in a residence in Lima, and as a result of that tip officers set up a surveillance to see if they observed Appellant come or go. While they did not observe Appellant leave the residence, they did observe another individual leave the residence, and after a lawful traffic stop, that individual disclosed that Appellant was, in fact, inside the residence. Based on those two factors, law enforcement attempted to enter the residence. However, prior to actually entering the residence to secure Appellant, Appellant was observed leaving the residence out the back and then returning inside the residence once he observed law enforcement officials outside. Thus, under the totality of the circumstances, we find law enforcement had probable cause to enter 1222 Catalpa Street.

{¶ 123} Next, Appellant contends that the protective sweep of the residence was unlawful, and as a result the search warrant and affidavit that was obtained as a result of that sweep was unconstitutional. However, as the Ohio Supreme Court held in *State v. Adams*, "[o]fficers making arrests in a home are permitted to conduct a protective sweep, which is a 'quick and limited search of the premises, incident to an arrest and conducted to protect the safety of the police officers and others.'" *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 188 quoting *United States v. Stover*, 474 F.3d 904, 911 (6th Cir. 2007). Furthermore, as the United States Supreme Court recognized in *Maryland v. Buie*, a protective sweep "occurs as an adjunct to the serious step of taking a person into custody for the purpose of prosecuting him for a crime." *Maryland v. Buie*, 494 U.S. 325, 333, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990). Because an in-home arrest puts the officer at the disadvantage of being on his adversary's "turf," officers are permitted to sweep the residence for hidden individuals for their own protection. *Id.*

{¶ 124} And lastly, Appellant argues that the trial court failed to suppress evidence concerning the contents of a Kindle and an IPad found in the residence. Appellant argues that because "virtually every electronic utensil and gadget in existence has some level of computer mechanism involved," the search warrant authorizing a search of "computers, computer hardware, computer software, cell phones and the contents...any and all material evidence of violations" was overly broad.

{¶ 125} "The particularity requirement of the Fourth Amendment was a response to 'those general warrants known as writs of assistance under which officers of the Crown had so bedeviled the colonists.'" *State v. Armstead*, 9th Dist. Medina No. 06CA0050-M, 2007-Ohio-1898, 2007 WL 1174655, ¶ 10 quoting *Stanford v. State of Tex.*, 379 U.S. 476, 481, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965). "A proper search warrant leaves nothing to the discretion of the officer executing it: 'the requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.'" *Id.* quoting *State of Tex.*, at 485, 85 S.Ct. 506.

{¶ 126} However, not all broad or generic descriptions of things to be seized are invalid under the Fourth Amendment. "A broad and generic description is valid if it 'is as specific as circumstances and nature of the activity under investigation permit' and enables the searchers to identify what they are authorized to seize." *Id.* quoting *United States v. Harris*, 903 F.2d 770, 775 (10th Cir.1990). Contrary to Appellant's argument, we find that that the "computer" language of search warrant notified searchers what they were authorized to seize, in this case, an electronic tablet and an IPad.

{¶ 127} Furthermore, as correctly noted by the trial court, even if the warrant failed the particularity test, the "good-faith exception" to the exclusionary rule would apply in this instance. As this Court held in *State v. McClanahan*, "the [United States Supreme] Court determined that the exclusionary rule of the Fourth Amendment 'should not be applied so as to bar the use in the prosecution's case-in-chief of evidence obtained by officers acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause.'" *State v. McClanahan*,

3rd Dist. Seneca No. 13-03-02, 2003-Ohio-4279, 2003 WL 21921048, ¶ 18 quoting *State v. George*, 45 Ohio St.3d 325, 330, 544 N.E.2d 640 (1989) citing *United States v. Leon*, 468 U.S. 897, 918-19, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). In the case at hand, there was no testimony regarding bad faith on part of the officers who searched the residence where Appellant was hiding.

{¶ 128} For the foregoing reasons, we overrule Appellant's eighth assignment of error.

(ECF No. 9-1, Exhibit 57, PageID# 500-10); *Davis,* 2018-Ohio-4368, ¶¶ 110-28.

In sum, Davis's Fourth Amendment claims are not cognizable because Davis had the opportunity for full and fair consideration of his Fourth Amendment claims in the Ohio state courts. The state trial court and state appellate court recognized Davis's Fourth Amendment claims and ruled on them, which is sufficient to preclude habeas review. *See Good,* 729 F.3d at 640 ("Good could, indeed did, present his suppression motion to the state trial court, and the trial court rejected it. He presented it again to the state appellate court, and the appellate court rejected it once more. That suffices to preclude review of the claim through a habeas corpus petition under *Stone v. Powell*.") Nor does Davis make any argument that the state courts' proceedings were a sham. *Id.* at 640. Accordingly, I recommend that the Court deny Davis's Ground Seven and Ground Eight claims as non-cognizable.

### H. Recommendation Regarding Certificate of Appealability

#### 1. Legal Standard

As amended by AEDPA, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for

establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "[a] 'substantial showing' requires the applicant to 'demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)).  The statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id.*; *see also* 28 U.S.C. § 2253(c)(3) ("The certificate of appealability under [§ 2253(c)(1)] shall indicate which specific issue or issues satisfy the showing required by [§ 2253(c)(2)]."). In light of the Rule 11 requirement that the court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

### 2. *Analysis*

Davis has not made a substantial showing of a denial of a constitutional right for the reasons set forth above.  Because jurists of reason would not find these conclusions debatable, I recommend that no certificate of appealability issue in this case.

## V.    RECOMMENDATION

Because Davis has presented only claims that are procedurally defaulted, non-cognizable in a federal habeas proceeding, or otherwise lack merit, I RECOMMEND that the Court DISMISS and/or DENY the Petition for a writ of habeas corpus under 28 U.S.C. § 2254.  I also recommend

that the Court not grant him a certificate of appealability.

Dated:  December 19, 2022                    *s/Jennifer Dowdell Armstrong*
                                             Jennifer Dowdell Armstrong
                                             U.S. Magistrate Judge


### NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

**Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v.*

*Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).